### BANK LINE LIMITED v. THE RIO ATUEL.

### THE HOLLYBANK.

No. 18633.
United States District Court
E. D. New York.
April 18, 1951.

Haight, Deming, Gardner, Poor & Havens, New York City, by MacDonald Deming, Charles S. Haight, Gordon W. Paulsen, all of New York City, for libellant.

Kirlin, Campbell & Keating, New York City, by Robert S. Erskine, New York City, for claimant-respondent.

INCH, Chief Judge.

This is an action by The Bank Line Limited, as owner of the steamship Hollybank, to recover damages sustained by the

Hollybank when allegedly, in order to avoid a collision with the steamship Rio Atuel, it was compelled to go aground in the Cape Cod Canal on the early morning of October 31, 1947.

At that time both ships were being piloted by duly licensed Federal Coast Pilots, and were proceeding in opposite directions in the Cape Cod Canal. Both were large freight vessels, the Hollybank being 431 feet long between perpendiculars with a beam of 56.3 feet, and the Rio Atuel being 439 feet long between perpendiculars, with a beam of 62.1 feet. The Hollybank had entered the easterly end of the Canal en route from Boston to New York, and the Rio Atuel had entered the westerly end of the Canal bound from New York to Boston. Both ships were showing proper lights. A strong northeast wind was blowing in intermittent squalls; the tide was at the last of the flood, flowing from east to west, and visibility for lights was good.

At the westerly end of the Hog Island Channel the Canal turns southerly into what is known as the Cleveland Ledge Channel. The bend of the Canal at the junction of the two channels is marked on the northwesterly side by Buoy 1, and on the southeasterly side by Buoy 2. Approximately 1100 yards northeast of Buoys 1 and 2 the Hog Island Channel is marked on the northwesterly side by Buoy 3, and on the southeasterly side by Buoy 4. At that point the Hog Island Channel is about 500 feet wide.

The Hollybank proceeded through the Canal without incident until she navigated well into the Hog Island Channel. In addition to the Federal Coast Pilot, there was present on the bridge of the Hollybank, the master, a watch officer, an apprentice, and the wheelsman, and stationed at the bow were the chief mate and a carpenter. The Rio Atuel was then proceeding on the opposite course up the Cleveland Ledge Channel directly below the Hog Island Channel, and present on her bridge were her master, a watch officer, the Federal Coast Pilot and the helmsman.

Before the Rio Atuel made the turn into the Hog Island Channel at Buoy 2, those in charge of the Hollybank, which was pro-ceeding in about the center of the channel, sighted the lights of the Rio Atuel and blew a single blast and altered course somewhat to starboard. When the Rio Atuel was "at about Buoy No. 2", the Hollybank reduced its speed and shortly thereafter blew another blast and again altered its course to starboard. These maneuvers placed the Hollybank close to the north bank of the Canal. Thereupon the Rio Atuel, which had rounded Buoy 2 and was proceeding substantially up the center of the Hog Island Channel, blew a short blast. As testified to by the pilot of the Hollybank, the Rio Atuel "then all of a sudden" took "a sheer to port", and in a few minutes "straightened up and came back the other way". In taking the sudden sheer to port the Rio Atuel swung across into the Hollybank's side of the channel to a point immediately ahead of the Hollybank. The pilot and master of the Hollybank, being faced with the alternative of a collision or a grounding, decided to run the Hollybank aground on the north side of the channel which they did at a point somewhat east of Buoy 3.

The sudden and unforeseeable swing of the Rio Atuel to port, when it should have turned to starboard, was explained by the Federal Coast Pilot of the Rio Atuel as having resulted from a misunderstanding of his orders to his helmsman, who understood no English. The pilot of the Rio Atuel testified that after he entered the Hog Island Channel he saw a light about 10 or 12 degrees off his port bow. At that time he was alone in the wheelhouse with this helmsman, as both the watch officer who had been translating the pilot's orders to the helmsman and the captain had left the bridge. On sighting the Hollybank the pilot ordered his helmsman to starboard his helm, but instead the helmsman put the wheel to port. Shortly thereafter the pilot noticed that the bow was moving to port and that he was closing "on that ledge". He testified, "I then told the quartermaster (this helmsman) to hard astarboard, and emphasized with my hand to the right all the time, and rushed over to him to see that he did it." The pilot testified that just before he succeeded in correcting the

port swing of his vessel it was "swinging across the channel", and the Hollybank bore "bow ahead, directly ahead, possibly a degree on starboard bow. Nearly ahead." He estimated that after correcting his port swing the Rio Atuel passed the Hollybank at a distance of about 30 feet between the ships' bridges. Witnesses aboard the Hollybank estimated that the stern of the Rio Atuel passed the Hollybank even closer, that is, at distances from 2 to 10 feet.

Because of this sudden and unexpected port swing of the Rio Atuel there was neither sufficient time nor space for the vessels to pass without collision, and under those circumstances I find that the decision of those in charge of the Hollybank to ground the vessel was a reasonable exercise of the judgment of prudent seamanship.

Claimant-respondent contends that the testimony of the Federal Coast Pilot aboard the Rio Atuel concerning the wheelsman's error was "deliberately fabricated in an effort to help out an old crony whose negligent navigation had put the Hollybank aground". After observing both pilots on the witness stand and evaluating their testimony together with all the other evidence presented, I am satisfied that they both testified truthfully.

It is also contended that the Hollybank was at fault for failing to blow a danger signal and for failing to stop and check its headway sooner than it did, so that the Rio Atuel might have been assured a safe passing. However, prior to the Rio Atuel's sudden and unpredictable swing to port, there was nothing in the situation to require the Hollybank to do any more than it did. On sighting the Rio Atuel the Hollybank twice blew a signal and maneuvered to starboard and also reduced its speed from full ahead to half ahead. Shortly thereafter the Rio Atuel blew a single blast, and the Hollybank was entitled to assume that the Rio Atuel would also turn to starboard. The pilot of the Rio Atuel in fact gave such an order to the wheelsman. Up to that point no dangerous situation was presented. The emergency arose when, due to the misunderstanding by the wheelsman of the pilot's correct order, the Rio Atuel unexpectedly veered to port. The pilot aboard the Rio Atuel was aware of the situation almost immediately, and took prompt action to correct it. Under those circumstances, the blowing of a danger signal would not have altered the situation and was not obligatory, since the situation was apparent to all concerned. The Claremont, D.C., 12 F.Supp. 288, 290, affirmed, Reiss S. S. Co. v. The Claremont, 2 Cir., 80 F.2d 1017; Bouchard Transp. Co., Inc., v. Conners Marine Co., Inc., 2 Cir., 129 F. 2d 110.

Accordingly, I find the Hollybank was free from fault and that the proximate and sole cause of the grounding and consequent damage to the Hollybank was the faulty navigation on the part of the Rio Atuel. Libellant is entitled to the usual interlocutory decree against claimant-respondent with costs.

Findings of fact and conclusions of law are being filed simultaneously herewith. Submit decree.